[Cite as *State v. Woods*, 2025-Ohio-2295.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JEREMY WOODS,

    DEFENDANT-APPELLANT.

CASE NO. 3-24-31

OPINION AND
JUDGMENT ENTRY

Appeal from Crawford County Common Pleas Court
Trial Court No. 24-CR-0195

Judgment Affirmed

Date of Decision:  June 30, 2025

APPEARANCES:

    *Christopher Bazeley* **for Appellant**

    *Ryan M. Hoovler* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jeremy Woods ("Woods") brings this appeal from the judgment of the Common Pleas Court of Crawford County finding him guilty of one count of domestic violence and sentencing him to sixteen months in prison. On appeal Woods alleges that he was denied the effective assistance of counsel during his trial because counsel allowed him to wear his jail uniform during the trial. For the reasons set forth below, the judgment is affirmed.

{¶2} On July 16, 2024, the Crawford County Grand Jury indicted Woods on one count of domestic violence in violation of R.C. 2919.25(A), (D)(3), a felony of the fourth degree. Woods entered a plea of not guilty to the charge. A jury trial was held from October 31 to November 1, 2024. At the conclusion of the trial, the jury returned a verdict of guilty and found that Woods had previously been convicted of domestic violence. The trial court then sentenced Woods to sixteen months in prison. Woods appealed from this judgment and raised the following assignment of error on appeal.

> **Woods' trial counsel was ineffective for allowing him to participate in his jury trial while wearing his jail uniform.**

{¶3} In the sole assignment of error, Woods alleges that his trial counsel was ineffective for failing to have him wear regular clothes during the trial rather than his jail uniform.

> In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, . . . had a fair trial and substantial justice was done." . . . When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." . . .

> On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent.

*State v. Calhoun*, 1999-Ohio-102 at page 289 (internal citations omitted). "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, ¶ 20 (3d Dist.). "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 2006-Ohio-2815, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, 2016-Ohio-5487, quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

{¶4} Here, Woods claims that the decision to have him appear in his jail uniform resulted in the jury finding him guilty. The Supreme Court of the United

States has held that requiring a defendant to participate in a jury trial while wearing a jail uniform generally infringes on their right to a presumption of innocence and that defendants have a due process right to wear civilian clothes during a jury trial. *Estelle v. Williams*, 425 U.S. 501 (1976). However, the Court determined that the focus was not so much on the fact that a defendant was appearing in jail attire, but that a defendant would be compelled to do so. "[A]lthough the State cannot, [consistent] with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as being tried in such clothes, for whatever reason is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id*. at 512-513. Despite the defendant's request to be given his civilian clothes at the jail being denied by the jailer, the majority of the Court affirmed the conviction due to the defendant waiving the error by failing to object.[1] In a subsequent case, the Court determined that there is no bright line rule requiring a conviction be reversed merely because the defendant appeared before the jury in jail attire. *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986).

{¶5} In Ohio, multiple districts have addressed the issue of a defendant appearing in jail attire rather than civilian attire. All of the opinions have held that the issue can be waived by the defendant pursuant to *Estelle*. Several of the districts

---

[1] The dissent in *Estelle* noted that if this were a constitutional due process issue as noted by the majority, it should require a knowing and intelligent waiver of the right on the record rather than accepting silence as a valid waiver of the right.

have also addressed the issue of whether counsel is ineffective for failing to object to the defendant appearing wearing jail attire. The consensus appears to be that counsel is not ineffective. *See State v. Wade*, 2023-Ohio-3490 (10th Dist.); *State v. Letner*, 2023-Ohio-610 (8th Dist.); *State v. Kyles*, 2023-Ohio-489 (12th Dist.); *State v. Bankston*, 2021-Ohio-3296 (11th Dist.); *State v. White*, 2019-Ohio-4562 (4th Dist.); *State v. Furr*, 2018-Ohio-2205 (1st Dist.); and *State v. Jackson*, 2008-Ohio-1563 (6th Dist.). In *Wade*, the Tenth District Court of Appeals noted "that counsel's decision to have a defendant appear at trial in jail clothing falls under the rubric of strategic and tactical trial decisions." *Wade* at ¶ 67. The Eleventh District Court of Appeals determined that "[i]t has been observed that there are legitimate reasons of trial strategy to allow the [jury] to see the defendant in jail clothes, such as to elicit sympathy, that an appellate court will not second guess". *Bankston* at ¶ 37.

**{¶6}** It is undisputed that the better practice is to have a defendant appear in civilian clothing rather than jail or prison attire. We do not disagree with the dissent that this is not a choice most attorneys would make and may well be ill advised.[2] If it is not possible or not desired by the defendant that he or she wear civilian clothing during a jury trial, the best practice would be for the trial court to address the issue on the record.

---

[2] We make no decision as to the other alleged instances of ineffective assistance of counsel raised *sua sponte* in the dissent as those issues were not raised on appeal.

{¶7} To show that an appearance in jail attire is a reversible error, a defendant must first show that he was compelled to stand trial wearing jail attire. *Letner,* at ¶ 14. In *Estelle,* the failure to object was determined to be the equivalent of a waiver of the issue of compulsion as to jail attire. A review of the record indicates that Woods did appear in his jail attire. The review also shows that the trial court did not address this issue and no explanation is provided as to why the defendant appeared in his jail uniform.[3] The only comment about Woods' attire was when his counsel asked a prospective juror if he would give less weight to Woods' testimony because of his appearing in his jail uniform, to which the prospective juror answered no. Without an objection, we are required to presume that counsel intended for Woods to appear in his jail attire. As there may be a legitimate reason for this choice, we cannot find it to be ineffective for counsel to make this decision.

{¶8} Even if we were to presume that counsel did err, the record does not indicate that the outcome of the trial was likely to be any different if Woods appeared in civilian clothing. Woods was charged with domestic violence which is defined as causing or attempting to cause physical harm to a family or household member. R.C. 2919.25(A). "Physical Harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.

---

[3] This Court does not know from the record what exactly the defendant was wearing, but no party disputes that the defendant was wearing the jail uniform.

2901.01(A)(3). Physical harm has been found to include any form of pain regardless of its duration. *State v. Madding*, 2011-Ohio-3865, ¶ 44 (2d Dist.).

{¶9} Testimony was presented by the victim that she was married to Woods at the time of the incident. The victim testified that Woods was acting strange and was saying she was a witch. Woods then became upset and started pressuring the victim to have sex with him. The victim refused and Woods became upset. Then Woods started calling her different names and acting very strange. The argument escalated and the victim tried to pick up her pajamas and her phone to leave the room. Woods then stopped her from leaving by grabbing on to her. When the victim again tried to leave, Woods grabbed her and forced her down onto the bed. The victim testified that she told him to stop and to let her go. Woods then leaned down over her, put his face against hers and "he goes in a real creepy voice, he says, ['W]itch, I'm gonna cut your head off with a sword[']." Tr. 254. The victim then told him to get off her and that he was hurting her. He eventually let her up and she again tried to leave the room. Woods then grabbed the victim again and put her back on the bed. According to the victim, Woods was putting pressure on her injured shoulder and was causing her pain. Woods continued to hold her down and started demanding sex again. The victim testified that by this time, the pain "was hurting bad". Woods had forced her hands over her head and due to an injury from a prior accident, the victim was not able to raise her arms that high, so Woods had to force them into that position. As a result, Woods caused the victim a great deal

of pain. The victim testified that she repeatedly told Woods he was hurting her, but he did not stop. The State presented pictures of the redness on the victim's arms from where Woods was holding her down.

{¶10} The State also presented the testimony of the victim's son, who was in the house at the time of the incident. The son testified that he heard Woods and the victim arguing. Then he heard the victim tell Woods to get off of her and state that Woods was hurting the victim. At that time, the son went down to intervene in the argument. The son testified that he observed Woods on top of his mother holding her down on the bed with both of her arms raised over her head. According to the son, he overheard the victim indicate that Woods was hurting her "about four times." Tr. 229.

{¶11} In addition to the testimony, the State also presented copies of letters written by Woods. Woods stated that he regretted "what occurred and the pain" that resulted from his actions. He also admitted that he did this as a result of not sleeping and using cocaine. "I'm actually somewhat thankful because this scenario could have kept going and become much worse considering the circumstances". He further commented, "Who knows what could have happened if [the victim's sons] hadn't intervened?". Woods admitted that he was hallucinating and thought he was "fighting demons". Woods neither testified nor presented the testimony of any other witness at trial. He did play the body camera footage showing statements made by the victim's son.

{¶12} Although there is no question that Woods did not cause *serious* physical harm, that is not a requirement in this case. The State only needed to show that Woods knowingly caused or attempted to cause physical harm to a family or household member. The testimony of the victim was that Woods' actions caused her to suffer pain. This testimony was supported not only by the testimony of the victim's son, but also by the pictures showing the marks on the victim's arms. The definition of physical harm does not require it to be serious or last for certain amount of time, just that an injury occurs no matter how minor. Woods presented no evidence to controvert the State's evidence, instead merely arguing that he had not meant to cause physical harm and had not struck the victim. However, there is no dispute that he intentionally held the victim down and that his actions resulted in the victim suffering pain. It is also undisputed that he did not stop his actions when the victim told him he was hurting her. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). While Woods may not have acted with the purpose of causing physical harm, he should have known his actions would likely do so and that the actions were doing so after the victim told him that they were doing so. Yet, he continued with the actions after being informed of the harm. Given the evidence in this case, the verdict of guilty in this case is strongly supported. This Court does not find that there was a reasonable probability that the outcome would have been different but for counsel's

alleged error. As a result, Woods has failed to show any prejudice and the assignment of error is overruled.

{¶13} Having found no prejudice to appellant in the particulars assigned and argued, the judgment of the Common Pleas Court of Crawford County is affirmed.

*Judgment Affirmed*

**WALDICK, P.J., concurs.**

**ZIMMERMAN, J., Dissents.**

{¶14} With due respect for the majority opinion, I must dissent and advocate for the reversal of Woods's conviction based on the profound and prejudicial ineffectiveness of his trial counsel, which constitutes a clear violation of his Sixth Amendment rights. Critically, Woods's representation suffered from multiple, critical failures that satisfy both prongs of the ineffective-assistance-of-counsel test and cannot plausibly be dismissed as trial tactics.

{¶15} First, Woods's trial counsel's failure to object to or take any action regarding Woods appearing before the jury in identifiable jail attire is a significant dereliction. Indeed, permitting a defendant to appear in jail attire erodes the presumption of innocence and risks influencing the jury. Woods's trial counsel's failure to object or seek civilian clothing created a scenario where this prejudice was inflicted upon Woods without challenge. Such an omission serves no legitimate strategic purpose; rather, it allows an "unacceptable risk" of undermining the

fairness of the fact-finding process. This failure alone represents deficient performance and casts serious doubt on the fairness of the proceedings.

{¶16} Second, Woods's trial counsel neglected to raise the crucial issue of Woods's competence to stand trial, despite potential indicators (which should have been explored and recorded). Ignoring signs of Woods's potential incompetence, failing to request an evaluation, and proceeding without a judicial determination abdicates a fundamental responsibility. Woods's trial counsel's failure to even raise this question, let alone ensure a hearing if warranted, falls well below the objective standard of reasonable legal assistance and its prejudicial effect is self-evident—an incompetent individual cannot receive a fair trial, thus undermining the reliability of the verdict..

{¶17} Third, and intertwined with the issue of competence, is counsel's failure to investigate or raise the possibility of an insanity defense. If Woods's mental state at the time of the offense suggested he did not know the wrongfulness of his actions due to a severe mental disease or defect, this constituted a potential affirmative defense. It is incumbent upon counsel to explore such avenues, especially if evidence suggests mental health issues. Foregoing a potential, viable defense without investigation cannot be deemed a reasonable tactic. It deprives the defendant of the opportunity to present a defense recognized by law, creating a reasonable probability of a different, more favorable outcome.

**{¶18}** The majority opinion suggests that these failures constitute trial tactics. In my opinion, this position is untenable. Allowing a client to appear in jail clothes offers no tactical advantage, only prejudice. Ignoring potential competency issues is not a strategy; it is a gamble with a defendant's fundamental right to a fair hearing. Failing to explore an insanity defense when a client's mental state is questionable is not a choice; it is an oversight.

**{¶19}** In sum, these omissions, viewed individually and cumulatively, demonstrate a performance by counsel that was not reasonably effective assistance. Moreover, Woods's trial counsel's failure to create a clear record on these vital issues compounds the error, hindering appellate review but not obscuring the fundamental denial of Woods's Sixth Amendment right to effective counsel. The resulting prejudice undermines confidence in the outcome. Therefore, I dissent and would reverse the conviction.

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

John R. Willamowski, Judge

Juergen A. Waldick, Judge

DISSENTS
William R. Zimmerman, Judge

DATED:
/hls