[Cite as *State v. Wade*, 2023-Ohio-3490.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

          Plaintiff-Appellee,               :               No. 22AP-560
                                                    (C.P.C. No. 18CR-1273)

v.                                                     :

Mario M. Wade,                                         :               (REGULAR CALENDAR)

          Defendant-Appellant.              :

---

D E C I S I O N

Rendered on September 28, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Kimberly Bond*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Mario M. Wade, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty of aggravated burglary, aggravated robbery, aggravated murder, murder, felonious assault, tampering with evidence, and having a weapon while under disability. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed April 27, 2018, plaintiff-appellee, State of Ohio, charged Wade with one count of aggravated burglary in violation of R.C. 2911.11, a first-degree felony; one count of aggravated robbery in violation of R.C. 2911.01, a first-degree felony; three counts of aggravated murder in violation of R.C. 2903.01, unclassified felonies; two counts of murder in violation of R.C. 2903.02, unclassified felonies; one count of attempted murder in violation of R.C. 2923.02 and 2903.02, a first-degree felony; one count of

felonious assault in violation of R.C. 2903.11, a second-degree felony; one count of tampering with evidence, in violation of R.C. 2921.12, a third-degree felony; and one count of having weapons while under disability in violation of R.C. 2923.13, a third-degree felony. All the charges except for the tampering with evidence charge and having weapons while under disability charge contained accompanying firearm and criminal gang specifications pursuant to R.C. 2941.145(A) and 2941.142(A). The felonious assault charge contained an additional pregnant victim specification pursuant to R.C. 2941.1423. The charges related to the shooting deaths of Brian Keith Williams, III and Marlazia Lashonda Jones-Mattox on or about January 1, 2018. Wade entered a plea of not guilty. The state subsequently moved to dismiss the pregnant victim specification attached to the felonious assault charge and the aggravated murder charge, and accompanying firearm specification related to Jones-Mattox.

{¶ 3} Wade elected to waive his right to a jury trial on the having weapons while under disability charge. The trial court conducted a jury trial on the remaining charges beginning August 8, 2022.

{¶ 4} During the trial, Officer Ehryn Kinzel of the Columbus Division of Police testified that on the evening of January 1, 2018, she was dispatched to South Hague Avenue after reports of shots fired. On the front porch of the house, first responders found Jones-Mattox, who was pregnant, unresponsive with visible gunshot wounds to her abdomen. Inside the house, officers found Williams and D.W., who was 15 years old at the time. Both Williams and D.W. had been shot multiple times. D.W. had been shot seven times, including two gunshots to his head. D.W. survived the shooting but has a traumatic brain injury and is triplegic. Williams and Jones-Mattox both died as a result of the gunshot wounds.

{¶ 5} A subsequent autopsy indicated Jones-Mattox had been shot multiple times in the buttocks and torso. Among her injuries, bullets perforated Jones-Mattox's kidney, liver, and uterus. Jones-Mattox was 35 weeks pregnant when she died, and her unborn child survived the shooting and was delivered at the hospital. Williams' autopsy indicated he had been shot nine times, including shots to his chest, abdomen, and back. The forensic pathologist was able to recover three bullets from Jones-Mattox's body and four bullets from Williams' body.

{¶ 6} A.R. testified that in January 2018 she had been dating Christian Dillion, Wade's co-defendant, for approximately ten months. A.R. testified that both Dillion and Wade claimed to be members of a gang called the Hilltop Hot Boys, and that D.W., one of their acquaintances, had tattoos on his hands that indicated membership in the Hilltop Hot Boys gang.

{¶ 7} On the evening of January 1, 2018, A.R. said she picked up Dillion in her Hyundai Elantra and drove him to a friend's house where they met Wade, who A.R. described as Dillion's close friend, and D.W. While at the friend's house, A.R. said Dillion, Wade, and D.W. were smoking marijuana and taking pills. At some point, A.R. said she and Dillion got into a physical altercation, leaving A.R. with an injury behind her ear. Because of the disturbance, A.R. said she, Dillion, Wade, and D.W. were told they needed to leave.

{¶ 8} A.R. testified that when they left the house, Dillion, Wade, and D.W. got in the car with her, and D.W. brought up the idea of getting weed from Williams. When they pulled up outside Williams' house, A.R. said D.W. suggested they rob Williams instead of buying marijuana from him. A.R. said she knew Williams because she had accompanied Dillion and his friends on multiple occasions to Williams' residence to buy marijuana or smoke it. Though she said she did not know Jones-Mattox, A.R. said she had seen Jones-Mattox on a couple of occasions in Williams' home and knew that Williams and Jones-Mattox were dating at that time. A.R. said she parked her car in the back and remained in the car while Dillion, Wade, and D.W. went into Williams' home. A.R. testified that she saw Dillion, Wade, and D.W. all with guns before they went into Williams' house and that they took the guns with them as they approached the house.

{¶ 9} Dillion left his phone in the car with A.R., and A.R. stated the phone rang while she was waiting in the car. When she answered the call, A.R. said she directed the caller, who was driving a silver SUV, to park in front of her car behind Williams' residence. A.R. testified the individuals in the car were planning to meet up with Dillion. At some point, A.R. said Dillion came out of the house, walked to the other car, and then went back into Williams' house.

{¶ 10} A.R. testified she never got out of the car and did not hear any gunshots while she was alone in the car. When Dillion and Wade returned to her car, A.R. testified she

started hearing gunshots. A.R. said she drove away and asked where D.W. was, and Dillion and Wade told A.R. that D.W. was dead. A.R. testified that Dillion "started freaking out" and put a gun to his head but that Wade got him to calm down and took the gun away from Dillion. (Tr. Vol. II at 202.)

{¶ 11} A.R. testified she drove to her mother's residence briefly and when she got back in the car, Wade instructed her to stop the car so he could dump one of the guns in the sewer on Santa Maria Drive in Grove City. A short time later, A.R. said she stopped the vehicle on October Ridge so that Dillion could get out of the car and place two more guns in a sewer. A.R. testified that Wade told her he had taken Williams' gun from the house, but he was "freaking out" because he could not remember where he put it. (Tr. Vol. II at 203.) Additionally, A.R. said Wade told her that he and Dillion wiped the doorknobs at Williams' house to get rid of any fingerprints.

{¶ 12} Dillion did not testify at trial. The prosecutor informed the trial court that Dillion's trial counsel had advised Dillion to invoke his Fifth Amendment right against self-incrimination and not testify. The prosecutor further stated that Dillion's trial counsel then conducted an in-person meeting with Dillion at the jail during which Dillion directly told his trial counsel that he would refuse to testify. Additionally, the prosecutor informed the trial court he had also contacted Dillion's appellate counsel, and Dillion's appellate counsel said Dillion would not testify but would plead the Fifth Amendment. Thus, the state sought to have Dillion declared an unavailable witness. Wade's counsel stipulated to Dillion's unavailability but objected to the admissibility of Wade's statements as not satisfying the requirements of a statement against interest. Over Wade's objection, the trial court permitted A.R. to testify to Dillion's statements to her as a statement against interest.

{¶ 13} A.R. testified that Dillion told her that D.W. already had his gun out and cocked when they got to Williams' door. Dillion told her that D.W. tried to fire his gun but that the gun jammed, at which point Williams started shooting at D.W. Dillion said that Wade then shot Williams. When they were about to leave, Dillion said they heard Jones-Mattox scream, so they went back in the house and saw she was trying to climb out the back window. A.R. testified that Dillion told her he took Wade's gun and shot Jones-Mattox. Further, A.R. said Dillion later told her that he was relieved Jones-Mattox was dead because

"no face no case," meaning there was no one who could identify Dillion for his involvement. (Tr. Vol. II at 224.)

{¶ 14} Several days after the shooting, A.R. said she and Dillion picked up Dillion's friend "Juany." (Tr. Vol. II at 208.) While Juany was in the back seat of her car, A.R. said Juany noticed a gun with green camouflage under the driver's seat. A.R. said Dillion told her it was Williams' gun, so A.R. stopped the vehicle at an apartment complex near Big Walnut Creek where Juany threw the gun into the water.

{¶ 15} Although A.R. initially lied to police about her knowledge of the events of January 1, 2018, she later agreed to cooperate with the police investigation and surrendered her phone with consent to search. Additionally, A.R. showed police each of the locations where the guns had been dropped, and law enforcement officers were able to recover guns from each of the locations A.R. identified, including a handgun recovered from the Big Walnut Creek.

{¶ 16} As part of the investigation, police discovered surveillance footage from the back door of a residence near Williams' home, though the time stamp of the video was off by two hours. The state played the surveillance footage for the jury. A.R. identified her car in the footage, and she testified she was in the car with Dillion, Wade, and D.W. smoking marijuana. The footage then shows three individuals, who A.R. identified as Dillion, Wade, and D.W., going into the gate by the garage while A.R. stays in the vehicle. Around 11:42 p.m., the footage shows a silver SUV pull up by A.R.'s car. Approximately three minutes later, the footage shows a man, who A.R. identified as Wade, get into her car. The SUV is partially obstructing the view of her vehicle, but A.R. testified that Dillion also got into her car at that point.

{¶ 17} The state also charged A.R. for her involvement in the events of January 1, 2018, and she agreed to testify on behalf of the state in Wade's case in exchange for a guilty plea to one count of aggravated robbery and the recommendation of a reduced sentence.

{¶ 18} Officer Eric Clouse, an expert in identifying criminal street gangs and members with the Columbus Division of Police, testified regarding the gang history in the Hilltop area. Officer Clouse testified he had worked in the area for 18 years and knew Dillion, Wade, and other individuals who were known members of the Hilltop Hot Boys. Having spent so much time in the area, Officer Clouse said he would frequently see Wade

associating with other members of the Hilltop Hot Boys, and he testified that Wade has gang affiliation tattoos and was previously convicted of participating in a criminal gang. Officer Clouse additionally testified that Wade and Dillion were active members of the Hilltop Hot Boys gang when the shooting occurred on January 1, 2018.

{¶ 19} Law enforcement officers apprehended Dillion and Wade on March 7, 2018 following an attempt to pull over a vehicle for a traffic violation. The driver of the vehicle did not comply, and police did not pursue the vehicle but aired a description of it and its direction of travel. Officer Clouse was in the area and heard the report. Following a brief pursuit on foot, Officer Clouse arrested Dillion and Wade who both had active warrants at the time.

{¶ 20} DNA testing on a handgun recovered from the scene of Wade's arrest excluded Dillion as the major contributor and identified Wade as the major contributor. Further ballistics testing on all the guns, bullets, and casings recovered in the case indicated the bullets recovered from the victims' bodies and the casings found at the scene were related to the guns recovered from the sewer on Red Leaf Lane, the sewer at Dennis Lane, and Big Walnut Creek.

{¶ 21} Following deliberations, the jury found Wade guilty of two counts of aggravated murder, two counts of murder, and one count each of felonious assault, aggravated burglary, aggravated robbery, and tampering with evidence, as well as the accompanying firearm and gang specifications. The trial court then found Wade guilty of having a weapon while under disability.

{¶ 22} The trial court immediately proceeded to sentencing, imposing an aggregate term of 72 years to life in prison. The trial court journalized Wade's convictions and sentence in an August 19, 2022 judgment entry. Wade timely appeals.

## II. Assignments of Error

{¶ 23} Wade assigns the following eight assignments of error for our review:

> 1. A criminal defendant is deprived of his right to effective assistance of counsel when his counsel's performance at trial is objectively unreasonable by stipulating to the unavailability of a witness in violation of the Sixth and Fourteenth Amendments of the United States Constitution; Article I, Sections 10 and 16 of the Ohio Constitution.

2. The trial court erred when it denied Mr. Wade's Rule 29 Motion for Acquittal.

3. The verdicts of guilt as to all counts were against the manifest weight of the evidence.

4. Mr. Wade was not afforded his right to effective assistance of counsel due to his counsel's failure to object to highly prejudicial testimony from the criminal gang expert.

5. The trial court erred when it, over objection, improperly permitted the State to introduce a gun to the jury and into evidence which had no relevance to the crimes Mr. Wade was being tried for.

6. Mr. Wade was denied effective assistance of counsel when his counsel failed to make a Motion to the trial court so that he would be dressed in civilian clothes during trial.

7. Mr. Wade was denied effective assistance of counsel when his counsel failed to voir dire jurors who were suspected of misconduct.

8. A sentence may not be sustained where the cumulative errors that occurred in the trial deprived the Defendant of a fair trial.

For ease of discussion, we address Wade's assignments of error out of order.

### III. Second Assignment of Error – Crim.R. 29 Motion for Acquittal

{¶ 24} In his second assignment of error, Wade argues the trial court erred when it denied his Crim.R. 29 motion for acquittal.

{¶ 25} Crim.R. 29 provides that the court, "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Review of the denial of a Crim.R. 29 motion and the sufficiency of the evidence apply the same standard. *State v. Fugate*, 10th Dist. No. 12AP-194, 2013-Ohio-79, ¶ 5, citing *State v. Turner*, 10th Dist. No. 04AP-364, 2004-Ohio-6609, ¶ 8. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. The relevant inquiry for an appellate court is whether the evidence presented, when viewed in

a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 26} Wade asserts the evidence was insufficient to convict him of aggravated burglary, aggravated robbery, aggravated murder, murder, felonious assault, tampering with evidence, and having a weapon while under disability. Rather than challenge the evidence related to any specific element of these offenses, Wade argues more generally that A.R.'s testimony was "very weak" and notes the lack of a corroborating witness, fingerprints, and DNA evidence at the scene of the crime. (Appellant's Brief at 16.) To the extent Wade challenges A.R.'s credibility, we will address his argument in our analysis of the manifest weight of the evidence. As to Wade's argument that the trial court erred in denying his Crim.R. 29 motion for acquittal, we must examine each count to determine whether the state presented sufficient evidence to prove the essential elements of each count beyond a reasonable doubt. Wade does not challenge the sufficiency of the evidence related to the firearm specifications or the criminal gang specifications.

**A. Aggravated Burglary**

{¶ 27} Wade was convicted of aggravated burglary. Pursuant to R.C. 2911.11(A)(1) and (2), "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense" if either "[t]he offender inflicts, or attempts or threatens to inflict physical harm on another," or "[t]he offender has a deadly weapon or dangerous ordinance on or about the offender's person or under the offender's control." The culpable mental state for aggravated burglary is "purposeful." *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 44.

{¶ 28} A.R. testified that Wade, Dillion, and D.W. approached Williams' residence with the plan to steal marijuana from him, and she further testified that Dillion told her that Wade shot Williams. Additionally, the surveillance video shows Wade going into the residence. Thus, the state presented sufficient evidence to support Wade's conviction of aggravated burglary.

### B. Aggravated Robbery

{¶ 29} Wade also was convicted of aggravated robbery. Pursuant to R.C. 2911.01(A), a person is guilty of aggravated robbery if the person in attempting to commit a theft offense, as defined in R.C. 2913.01, or in fleeing immediately after the attempt or offense, either inflicted, or attempted to inflict, serious physical harm on another, or had a deadly weapon on or about the offender's person or under the offender's control and displayed the weapon, brandished it, indicated that the offender possessed it, or used it. R.C. 2911.01(A)(1) and (3). A "theft offense," pursuant to R.C. 2913.01(K), includes violations of R.C. 2911.02, robbery, and 2913.02, theft. Theft requires the state to prove beyond a reasonable doubt that the defendant, with the purpose to deprive the owner of property, knowingly obtained control over the property without the consent of the owner or through deception, threat, or intimidation. R.C. 2913.02. A person acts with a particular purpose when "it is [his] specific intention to cause a certain result." R.C. 2901.22(A).

{¶ 30} A.R. testified that Wade, Dillion, and D.W. planned to steal drugs from Williams, and she further testified that Dillion and Wade returned to her vehicle with Williams' gun. Additionally, A.R. testified that Dillion said Wade shot Williams. Thus, the state presented sufficient evidence to support Wade's conviction of aggravated robbery.

### C. Aggravated Murder

{¶ 31} Wade was convicted of two counts of aggravated murder related to Williams. Pursuant to R.C. 2903.01(A), "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Under R.C. 2903.01(B), "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit" certain offenses including aggravated robbery and aggravated burglary.

{¶ 32} "Proof of 'prior calculation and design' requires proof of 'a scheme designed to implement the calculated decision to kill.' " *State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, ¶ 60, quoting *State v. Cotton*, 56 Ohio St.2d 8, 11 (1978). "The amount of care or time that the defendant spends in planning and analyzing the crime are not critical factors in themselves; however, they must amount to more than momentary deliberation." (Internal quotations and citations omitted.) *Id*.

{¶ 33} In determining whether there is legally sufficient evidence to prove prior calculation and design, a court considers three factors: (1) whether the accused and the victim knew each other and, if so, whether that relationship was strained; (2) whether the accused gave thought or preparation to choosing the murder weapon or murder site; and (3) whether the act was drawn out or was " 'an almost instantaneous eruption of events.' " *Hundley* at ¶ 61, quoting *State v. Taylor*, 78 Ohio St.3d 15, 19 (1997). The Supreme Court of Ohio has " 'never set forth a bright-line test for discerning the presence or absence of prior calculation and design but instead [directs appellate courts to] undertake[ ] a unique analysis of the facts of each case.' " *Hundley* at ¶ 61, quoting *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 56.

{¶ 34} Here, A.R. testified that Dillion told her that Wade shot Williams, and, as noted above, there was sufficient evidence that Wade committed both aggravated burglary and aggravated robbery in the course of events. As to prior calculation and design, A.R. testified that Wade and his associates knew Williams. Additionally, A.R. testified that Wade and the associates planned to rob Williams, indicating some strain in the relationship. Further, A.R. testified that she drove Wade, Dillion, and D.W. around while they came up with their plan to rob Williams. Dillion told A.R. that when the group approached Williams' house, D.W. already had his gun cocked but it jammed when he tried to fire it, indicating the use of deadly force was part of the plan. When viewed in a light most favorable to the prosecution, the evidence at trial was sufficient to support a finding of prior calculation and design.

{¶ 35} For these reasons, the state presented sufficient evidence to support both of Wade's convictions of aggravated murder.

**D. Murder**

{¶ 36} The jury also convicted Wade of two counts of murder pursuant to R.C. 2903.02(B), also known as felony murder. In order to convict a defendant of felony murder, in violation of R.C. 2903.02(B), the state must prove the defendant caused the death of another "as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." Aggravated robbery is an offense of violence. R.C. 2901.01(A)(9)(a).

{¶ 37} Under R.C. 2923.03(A)(2), "complicity" is defined as "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." To support a conviction for complicity, pursuant to R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus.

{¶ 38} A.R. testified that Dillion, Wade, and D.W. approached the residence with the plan of robbing Williams, and she further testified that Dillion told her Wade shot Williams while Dillion shot Jones-Mattox. For the same reasons we articulated in our discussion of Wade's aggravated murder convictions, A.R.'s testimony that Dillion told her that he shot Jones-Mattox and Wade shot Williams during the aggravated robbery was sufficient evidence to convict Wade of felony murder both as a principal offender as to Williams and under a complicity theory as to Jones-Mattox.

### E. Felonious Assault

{¶ 39} The jury additionally convicted Wade of one count of felonious assault related to Jones-Mattox's unborn child. Under R.C. 2903.11(A)(2), no person shall knowingly "cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of [his] purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature." Evidence that a defendant fired a gun in the direction of the victim is sufficient evidence that the defendant acted knowingly for purposes of a conviction of felonious assault. *State v. Fox*, 10th Dist. No. 17AP-295, 2018-Ohio-501, ¶ 14.

{¶ 40} A.R. testified that Dillion admitted to taking Wade's weapon and shooting Jones-Mattox as she tried to escape through the window. Officer Kinzel testified Jones-Mattox was visibly pregnant. The autopsy indicated Jones-Mattox was shot three times in the buttocks, one time in the thigh, and several times in her torso. This evidence was sufficient to support Wade's conviction, under a complicity theory, of the felonious assault of the unborn child.

**F. Tampering with Evidence**

{¶ 41} R.C. 2921.12(A)(1) defines tampering with evidence and provides "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." In determining whether a person knew an official investigation was likely to be instituted, "[l]ikelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. Further, "[t]he law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60 (1995), citing *State v. Carter*, 72 Ohio St.3d 545, 554 (1995). The trier of fact may consider the entire set of circumstances surrounding the event and infer intent from those facts. *State v. Loughman*, 10th Dist. No. 10AP-636, 2011-Ohio-1893, ¶ 47, citing *State v. Grant*, 67 Ohio St.3d 465, 478 (1993).

{¶ 42} A.R. testified that Wade and Dillion told her to stop the car so they could throw guns in the sewer, and law enforcement later recovered guns in those locations. The jury could have concluded from this evidence that Wade knew his conduct would have triggered an investigation into the shooting and that Wade's purpose in disposing of the guns was to impair their availability during such an investigation. Thus, the state presented sufficient evidence that Wade purposely concealed evidence pivotal to the investigation into the shooting.

**G. Having a Weapon Under Disability**

{¶ 43} To prove Wade committed the offense of having a weapon while under disability, the state was required to prove that Wade knowingly acquired, had, carried, or used a firearm, and had been convicted of a felony offense of violence. R.C. 2923.13(A)(2).

{¶ 44} A.R. testified that Wade had a gun with him during the events and that Dillion told her that Wade shot Williams. Additionally, the parties stipulated to Wade's prior conviction. (Joint Ex. 11.) Thus, the state presented sufficient evidence to convict Wade of having a weapon while under disability.

{¶ 45} Because the state presented sufficient evidence to support all of Wade's convictions, the trial court did not err in denying Wade's Crim.R. 29 motion for acquittal.

*State v. McDonald-Glasco*, 10th Dist. No. 17AP-368, 2018-Ohio-1918, ¶ 45.  We overrule Wade's second assignment of error.

## IV. Third Assignment of Error – Manifest Weight of the Evidence

{¶ 46} In his third assignment of error, Wade argues his convictions are against the manifest weight of the evidence.

{¶ 47} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient, competent, credible evidence supports the jury's verdict.  *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins*, 78 Ohio St.3d, at 387.  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."  *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  Determinations of credibility and weight of the testimony are primarily for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believe[ing] all, part, or none of a witness's testimony."  *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 48} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 49} Wade argues his convictions are against the manifest weight of the evidence on the general grounds that the state did not present evidence to corroborate A.R.'s testimony.  Though Wade describes A.R.'s testimony as weak, he does not suggest her testimony lacked credibility to such a degree that his convictions are against the manifest

weight of the evidence. *See, e.g., State v. Webster*, 10th Dist. No. 20AP-171, 2021-Ohio-3218, ¶ 74 (it is within the province of the jury to believe a witness' testimony despite his or her admitted involvement in the offenses and plea agreement with the state), citing *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18 (noting the jury is in the best position to assess the credibility of a co-defendant). We also note that A.R.'s testimony was corroborated by the surveillance footage and by the recovery of the firearms in the locations that A.R told police Dillion and Wade tried to dispose of them. Considering all the evidence, we cannot say the jury lost its way in believing A.R.'s testimony.

{¶ 50} Further, to the extent Wade relies on a lack of forensic or DNA evidence linking him to the crime scene, this court has repeatedly stated that " '[a] lack of physical evidence, standing alone, does not render [a defendant's] conviction against the manifest weight of the evidence.' " *State v. Murray*, 10th Dist. No. 16AP-16, 2017-Ohio-949, ¶ 38, quoting *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 21, citing *State v. Conner*, 10th Dist. No. 12AP-698, 2013-Ohio-2773, ¶ 12. " 'If [witness] testimony is believed then the lack of fingerprints, DNA, footprints or any other physical evidence does not render the conviction against the manifest weight of the evidence.' " *Peeples* at ¶ 21, quoting *State v. Jackson*, 7th Dist. No. 09 JE 13, 2009-Ohio-6407, ¶ 16. As stated above, A.R. provided credible testimony that Dillion, Wade, and D.W. went to Williams' house with the specific purpose of robbing him, approached the house with weapons, Wade shot Williams while Dillion shot Jones-Mattox, and that Wade and Dillion then attempted to dispose of the guns.

{¶ 51} Thus, in light of the evidence discussed above, as well as the record in its entirety, we do not find the jury clearly lost its way in finding Wade guilty of aggravated burglary, aggravated robbery, aggravated murder, murder, felonious assault, and tampering with evidence. After an independent review of the record, we find Wade's convictions are not against the manifest weight of the evidence. We, therefore, overrule Wade's third assignment of error.

## V. First, Fourth, Sixth, and Seventh Assignments of Error – Ineffective Assistance of Counsel

{¶ 52} Wade's first, fourth, sixth, and seventh assignments of error are interrelated, and we address them jointly. In his first assignment of error, Wade argues he was denied the effective assistance of counsel when his trial counsel stipulated to the unavailability of a witness. In his fourth assignment of error, Wade argues he was denied the effective assistance of counsel when his counsel failed to object to the testimony of a criminal gang expert. In his sixth assignment of error, Wade argues he was denied the effective assistance of counsel when his trial counsel failed to make a motion for Wade to appear in civilian clothing during the trial. In his seventh assignment of error, Wade argues he was denied the effective assistance of counsel when his trial counsel failed to voir dire jurors who were suspected of misconduct. Taken together, these assignments of error assert Wade received the ineffective assistance of counsel.

{¶ 53} In order to prevail on a claim of ineffective assistance of counsel, Wade must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Wade to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If Wade can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, Wade must establish there is a reasonable probability that, but for his counsel's errors, the results of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 54} In considering claims of ineffective assistance of counsel, courts review these claims with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. Wade contends his trial counsel was ineffective in: (1) stipulating to the unavailability of a witness; (2) failing to object to evidence of a prior conviction and the criminal gang expert's accompanying testimony; (3) failing to make a motion for Wade to appear in civilian clothing at trial; and (4) failing to voir dire jurors who were suspected of

misconduct. We address each of these alleged instances of ineffective assistance of counsel in turn.

### A. Stipulating to Unavailability of a Witness

{¶ 55} Wade's first allegation of ineffective assistance of counsel is his trial counsel's stipulation to the unavailability of Dillion as a witness. Wade argues his counsel should have objected to the state's characterization of Dillion as unavailable. To succeed on a claim of ineffective assistance of counsel based on counsel's failure to file an objection, an appellant must demonstrate that the objection had a reasonable probability of success. *State v. Jones*, 10th Dist. No. 18AP-33, 2019-Ohio-2134, ¶ 52, citing *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 25. Additionally, to show prejudice under the second prong of the *Strickland* test based on counsel's lack of objection, an appellant must establish a reasonable probability that the result of the trial would have been different had counsel made the objection. *State v. Messenger*, 10th Dist. No. 19AP-879, 2021-Ohio-2044, ¶ 72.

{¶ 56} Generally, a statement is impermissible hearsay when it is an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C) and 802. However, pursuant to Evid.R. 804(B)(3), a statement that is offered against a party is not excluded by the hearsay rule if the declarant is unavailable as a witness and the statement "was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true." Additionally, "[a] statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Evid.R. 804(B)(3). A declarant is unavailable for purposes of a statement against interest where the declarant "[i]s exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." Evid.R. 804(A)(1).

{¶ 57} As the Supreme Court has explained, a declarant is "unavailable" for purposes of Evid.R. 804 where the declarant invokes his Fifth Amendment right against self-incrimination. *State v. Landrum*, 53 Ohio St.3d 107, 113 (1990). Here, both the state

and Wade's counsel stipulated to Dillion's unavailability as a witness. Wade now argues his trial counsel was deficient in stipulating to Dillion's unavailability and instead should have objected to Dillion's unavailability. Wade does not argue that Dillion's invocation of his Fifth Amendment right against self-incrimination was not sufficient to render Dillion unavailable for purposes of Evid.R. 804. Instead, Wade asserts his trial counsel should not have stipulated to Dillion's unavailability and that Dillion instead should have been required to take the stand and personally assert his Fifth Amendment privilege.

{¶ 58} A criminal defendant does not have a right to place a witness on the stand for the sole purpose of hearing the witness invoke the Fifth Amendment. *State v. T.S.*, 10th Dist. No. 20AP-159, 2021-Ohio-2203, ¶ 30, citing *State v. Kirk*, 72 Ohio St.3d 564, 569 (1995) ("defendant did not have a right to place [a] witness on the stand for the sole purpose of having him assert his Fifth Amendment privilege in front of the jury"); *State v. Chatman*, 10th Dist. No. 08AP-803, 2009-Ohio-2504, ¶ 45 ("there is no 'right' of a defendant to call a witness solely for the purpose of invoking his or her Fifth Amendment rights"). Additionally, "[a] trial court may exclude a person from appearing as a witness on behalf of a criminal defendant at trial if the court determines that the witness will not offer any testimony, but merely intends to assert the Fifth Amendment privilege against self-incrimination." *Kirk* at paragraph one of the syllabus. Thus, to exclude a witness under *Kirk*, the trial court must conduct a sufficient inquiry to determine that the witness will not offer any testimony but only intends to invoke the Fifth Amendment privilege against self-incrimination. *T.S.* at ¶ 31, citing *Kirk* at 569, and *State v. Spangler*, 5th Dist. No. 16-CA-12, 2017-Ohio-268, ¶ 36 (holding "the trial court conducted a sufficient inquiry" under *Kirk* where the witness "was not directly subject to the trial court's inquiry," but her "interests were represented by her appointed counsel").

{¶ 59} As noted above, the prosecutor informed the trial court that he had spoken with Dillion's trial counsel who informed the prosecutor that Dillion's counsel advised Dillion not to testify and that Dillion told his trial counsel, during an in-person meeting, that he would not testify but would invoke his Fifth Amendment right against self-incrimination. Additionally, the prosecutor informed the trial court that Dillion's appellate counsel also stated that Dillion would not testify but would invoke his Fifth Amendment right. Wade's trial counsel stated he additionally spoke with Dillion's trial counsel,

confirming that Dillion would invoke his Fifth Amendment privilege. These representations were sufficient for the trial court, under *Kirk*, to exclude Dillion and to find Dillion unavailable. *T.S.* at ¶ 31 (trial court conducted a sufficient inquiry to exclude the witness where counsel for the declarant represented to the trial court that she did not wish to testify, that counsel had advised the declarant not to testify, and that the declarant's intention was to invoke the Fifth Amendment on the witness stand if called to testify); *Spangler* at ¶ 36-37.

**{¶ 60}** The record reflects that Dillion was unavailable for purposes of Evid.R. 804. Because Wade did not have a right, pursuant to *Kirk*, to force Dillion to take the stand in order to invoke his Fifth Amendment right against self-incrimination and because the trial court conducted a sufficient inquiry to determine Dillion's unavailability, Wade cannot show that an objection to Dillion's unavailability had a reasonable probability of success. *Jones* at ¶ 52. Accordingly, Wade's trial counsel was not deficient in stipulating to Dillion's unavailability.

### B. Stipulation to Prior Conviction

**{¶ 61}** Wade's next allegation of ineffective assistance of counsel is his trial counsel's failure to object to evidence of Wade's prior conviction and what Wade deems "highly prejudicial" testimony from the criminal gang expert related to that prior conviction. (Appellant's Brief at 19.) Instead, Wade asserts his counsel should have objected to the evidence of his prior conviction as other acts evidence.

**{¶ 62}** Evid.R. 404(B)(1) states that "[e]vidence of other crime, wrong, or act is not admissible to prove the [appellant's] character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence, however "may, be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404 (B)(2). These listed exceptions are not exclusive, and a trial court properly admits evidence necessary to prove an element of a charged specification. *State v. Glen-Coulverson*, 10th Dist. No. 16AP-265, 2017-Ohio-2671, ¶ 34, citing *State v. Sosnoskie*, 2d Dist. No. 22713, 2009-Ohio-2327, ¶ 33; *State v. Coleman*, 85 Ohio St.3d 129, 140 (1999).

**{¶ 63}** As set forth above, Wade's indictment contained gang specifications. R.C. 2941.142 mandates a prison term of one, two, or three years on an offender who commits a

felony "that is an offense of violence while participating in a criminal gang." Pursuant to R.C. 2941.142, to demonstrate that Wade committed a felony "that is an offense of violence while participating in a criminal gang," the state needed to present evidence of the existence of a criminal gang and that Wade committed a felonious act of violence while participating in that criminal gang. To prove the existence of a criminal gang for purposes of the specification, the state must prove the "persons in the organization, association, or group individually or collectively engage in or have engaged in a pattern of criminal gang activity." R.C. 2923.41(A)(3). Additionally, the state must prove the offender committed the offense of violence while participating in that criminal gang. *Glen-Coulverson* at ¶ 30. Therefore, gang-related testimony is both relevant and necessary for the state to prove a gang specification. *Id.*

{¶ 64} Wade argues his trial counsel was deficient in failing to object to evidence of his 2018 criminal conviction and Officer Clouse's accompanying testimony describing the circumstances of that conviction, including information about other alleged gang members involved in the prior conviction. However, this court has found testimony by a criminal gang expert providing specific information about a prior criminal offense to be relevant and not unfairly prejudicial as proof of a gang specification. *Glen-Coulverson* at ¶ 30 ("that testimony constituted evidentiary support for the charged gang specification and was not excludable as other acts evidence pursuant to Evid.R. 404(B)"); *State v. Wade*, 10th Dist. No. 16AP-674, 2018-Ohio-976, ¶ 53 ("[t]he interaction between Evid.R. 404(B), and proof of gang specifications under R.C. 2923.41(A), presents a delicate balance for the trial court, because proof of gang membership and participation will necessarily involve testimony regarding the defendant's past criminal activity," but "because proof of such participation and membership is an element of the gang specification, relevant evidence regarding such conduct, i.e., other acts, is not other-acts evidence because it goes to proof of an element of a charged crime"). Because Wade's prior conviction was relevant and not unfairly prejudicial as proof of the gang specification, Wade does not show an objection to the evidence of the prior conviction or Officer Clouse's testimony describing the circumstances of that prior conviction had a reasonable probability of success. *Jones* at ¶ 52. Moreover, trial counsel's decision to stipulate to the prior conviction could have been a reasonable strategic decision to avoid bringing more attention to this evidence. *State v. Thompson,*

10th Dist. No. 18AP-211, 2019-Ohio-2525, ¶ 21 ("[s]trategic and tactical decisions of trial counsel cannot form the basis of a claim of ineffective assistance of counsel"). Thus, Wade's trial counsel was not deficient in stipulating to his prior conviction or in failing to object to Officer Clouse's testimony related to that prior conviction.

**C. Motion to Appear in Civilian Clothing**

{¶ 65} Wade's third allegation of ineffective assistance of counsel is his trial counsel's failure to make a motion to have Wade appear in civilian clothing during the trial. Wade argues his appearance before the jury in prison clothing undermined his presumption of innocence. He asserts, therefore, that his counsel's failure to move for him to appear in civilian clothing violated his right to a fair trial pursuant to the Fourteenth Amendment to the United States Constitution.

{¶ 66} As the Supreme Court of the United States has explained, the question of whether a criminal defendant's appearance before the jury in identifiable prison or jail clothing violates that person's right to a fair trial focuses on whether the defendant was *compelled* to do so. *Estelle v. Williams*, 425 U.S. 501, 502 (1976) ("[w]e granted certiorari in this case to determine whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal protection of the laws"). The Supreme Court explained the focus on compulsion by noting that while compelling a defendant to go to trial in jail clothing may impair the presumption of innocence, "instances frequently arise where a defendant prefers to stand trial before his peers in prison garments." *Estelle* at 504, 508. "The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id.* at 508. Thus, the Supreme Court held "[a]lthough the State cannot, consistently within the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, *the failure to make an objection* to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." (Emphasis added.) *Id.* at 512-513.

{¶ 67} Here, there is nothing in the record indicating Wade was compelled to wear prison clothing, and Wade does not suggest that was the case. Instead, Wade asserts reasonably prudent counsel would have made a motion for him to appear in civilian

clothing. We are mindful, however, that counsel's decision to have a defendant appear at trial in jail clothing falls under the rubric of strategic and tactical trial decisions. *Estelle* at 512 ("once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney"). *See also State v. Bankston*, 11th Dist. No. 2020-A-0005, 2021-Ohio-4332, ¶ 37 ("[i]t has been observed that there are legitimate reasons of trial strategy to allow the [jury] to see the defendant in jail clothes, such as to elicit sympathy, that an appellate court will not second guess"), citing *State v. Levingston*, 5th Dist. No. 17CA6, 2017-Ohio-7032, ¶ 35, and *State v. Miller*, 1st Dist. No. C-010543, 2002-Ohio-3296, ¶ 26; *State v. White*, 4th Dist. No. 19CA715, 2019-Ohio-4562, ¶ 50, citing *State v. Judy*, 4th Dist. No. 08CA3013, 2008-Ohio-5551, ¶ 42 ("[a]lthough other attorneys may have suggested or done otherwise, we decline to second-guess trial counsel's decision to allow his client to stand trial in prison garb because this decision has been acknowledged to be a strategic one").

{¶ 68} The only reference in the record to Wade's attire came from his counsel during closing arguments when defense counsel acknowledged Wade's prior criminal conduct and stated "[he] is the guy wearing jail clothes. We didn't dress him up." (Tr. Vol. IV at 558.) This comment suggests the decision to have Wade wear jail clothing for his trial was a strategic one. As noted above, strategic and tactical decisions of trial counsel cannot form the basis of a claim of ineffective assistance of counsel, and we see no reason to deviate from that general rule here. *Thompson* at ¶ 21, citing *Glenn-Coulverson* at ¶ 56.

{¶ 69} Accordingly, because the record indicates counsel's decision to have Wade appear at trial in jail clothing likely was a strategic decision and because Wade was not compelled to appear in jail clothing, trial counsel's failure to make a motion for Wade to appear in civilian clothing does not substantiate a claim of ineffective assistance of counsel.

**D. Voir Dire of Jurors**

{¶ 70} Wade's fourth and final allegation of ineffective assistance of counsel is his trial counsel's failure to voir dire jurors suspected of misconduct.

{¶ 71} The transcript indicates that during a lunch break, the bailiff heard one juror talking to another juror. The bailiff instructed the jurors to stop and informed the trial court of the conduct. Both the prosecutor and defense counsel addressed the trial court on the record and agreed that the court's normal admonitions would be satisfactory. Defense

counsel stated he went over the situation with Wade and presented him with all available options, and that Wade agreed not to request a mistrial. Both defense counsel and the state agreed they would not be asking for any individual voir dire, and the trial then resumed with those two jurors remaining on the jury for the remainder of the trial and deliberations. The record does not indicate the substance of the juror's conversation. Wade now argues his trial counsel was ineffective for failing to voir dire the two jurors.

{¶ 72} We do not agree with Wade that his trial counsel was deficient for failing to request voir dire of the individual jurors involved in the incident. "Decisions about voir dire are highly subjective and prone to individual attorney strategy because they are often based on intangible factors." *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 153, citing *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 64. "Accordingly, 'counsel is in the best position to determine whether any potential juror should be questioned and to what extent.' " *Id.*, quoting *State v. Murphy*, 91 Ohio St.3d 516, 539 (2001). Although Wade's argument relates not to the pre-trial voir dire process but to an incident later in the trial, the Supreme Court of Ohio has held "the same deference" applies to counsel's decision whether to voir dire the jury after the trial has started when a situation occurs that may invite further questioning of the jury. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 296-98 (applying the same deference to trial counsel's decision whether to voir dire the jury in the middle of trial after a "courtroom incident" as the court would normally apply to pre-trial jury voir dire). Thus, we find Wade's trial counsel's decision not to request further voir dire of the two jurors falls under the rubric of trial strategy, and we will not second-guess counsel's strategic decisions. *McKelton* at ¶ 297, citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 128. It is possible trial counsel favorably viewed these two jurors and did not want to risk their removal from the jury by further inquiry into the matter. *Mundt* at ¶ 66 (no deficient performance from counsel's failure to ask individual questions of a certain juror on voir dire as counsel may have made the strategic decision that this juror would be favorable to the defense); *McKelton* at ¶ 298 (deferring to counsel's judgments about whether to voir dire the jury in the middle of trial following a courtroom "outburst" that "happened very quickly" because "[u]nder the circumstances, counsel could reasonably decide not to question the jury"). Based on this record, Wade has not

established deficient performance from his trial counsel's failure to request further voir dire of the two jurors.

{¶ 73} For these reasons, Wade is unable to demonstrate he received the ineffective assistance of counsel. Accordingly, we overrule Wade's first, fourth, sixth, and seventh assignments of error.

## VI. Fifth Assignment of Error – Evidentiary Rulings

{¶ 74} In his fifth assignment of error, Wade argues the trial court erred in admitting into evidence the presence of a gun found during his arrest. Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *State v. Abdullahi*, 10th Dist. No. 18AP-222, 2018-Ohio-5146, ¶ 17, citing *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 75} Wade's argument under this assignment of error relates to the gun found when he was arrested. Over his objection, the state introduced the presence of this gun into evidence even though ballistic testing showed the gun found at the scene of Wade's arrest was not used in the shooting, although DNA evidence linked the gun to Wade. Wade asserts the evidence of this gun was not relevant and unfairly prejudicial.

{¶ 76} Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 77} Wade first argues the evidence of the gun found at the time of his arrest was not relevant because the ballistics tests showed this gun was not used in the shooting. However, the trial court determined the gun was relevant to proving the gang specification. As noted above, to prove the gang specification, the state had to prove that Wade "committed a felony that is an offense of violence while participating in a criminal gang." R.C. 2941.142. Additionally, the state had to prove that the Hilltop Hot Boys gang

"engage[s] in a pattern of criminal activity" and therefore is a "criminal gang" within the meaning of R.C. 2923.41(A)(3).

{¶ 78} The gun at issue here was not used in the shootings of Williams and Jones-Mattox but was found and linked to Wade by DNA testing at the time of his arrest. Officer Clouse testified that the Hilltop Hot Boys were engaged in weapons offenses and drug dealing. Other testimony at trial described the circumstances of Wade's arrest, including that he was arrested in the company of other gang members after fleeing from police. Thus, the specific evidence about the circumstances of Wade's arrest, including that he was in the presence of other gang members and that he had a gun with him, was relevant to proving the gang specification. The trial court did not abuse its discretion in finding the gun to be relevant evidence under Evid.R. 401.

{¶ 79} Wade next argues that even if the evidence of the gun was relevant, the trial court nonetheless abused its discretion in admitting the gun into evidence because the danger of unfair prejudice substantially outweighed the probative value of the evidence. " 'If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." ' " *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, ¶ 24, quoting *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172 (2001). Thus, " '[u]nfair prejudice is that quality of evidence which might result in an improper basis for a jury decision.' " *Id.*, quoting *Oberlin* at 172. Evidence may be unfairly prejudicial if it " 'arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish.' " *Id.*, quoting *Oberlin* at 172. Often, though not always, evidence is unfairly prejudicial if it appeals to the jury's emotions rather than the jury's intellect. *Id.*

{¶ 80} Fairness is subjective and thus the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court. *Crotts* at ¶ 25, citing *State v. Robb*, 88 Ohio St.3d 59, 69 (2000). Because the gun was not used in the shootings and there was other evidence related to the gang specification, Wade asserts the evidence of the gun found during his arrest is "arresting enough to lure a juror into a sequence of bad character reasoning" and use that character reasoning as the basis for finding him guilty. (Internal citation and quotation omitted.) *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, ¶ 36. However, the state clearly informed the jury that this gun was not used in the

shooting, and defense counsel during closing arguments was able to use the presence of this gun to argue that another gun connected to the shooting was still unaccounted for, raising the possibility that an unidentified person was responsible instead of Wade. In this way, the evidence of this gun could be viewed as favorable to Wade's theory of the case.

{¶ 81} Additionally, the trial court instructed the jury that evidence about other acts by gang members and associates could not be used to prove Wade's character or his conformity therewith but was instead relevant only to the gang specification. A jury is presumed to follow the instructions of the court, including limiting instructions. *State v. Hicks*, 10th Dist. No. 18AP-883, 2020-Ohio-548, ¶ 23, citing *State v. Shipley*, 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 62. The limiting instruction provided here mitigated any danger that the jury would unfairly consider the gun found during Wade's arrest as proof of Wade's bad character or that he acted in accordance therewith. *Hicks* at ¶ 22-23.

{¶ 82} Thus, we find the trial court did not abuse its discretion in determining the probative value of the gun found during Wade's arrest outweighed any potential prejudice. *See State v. Sherman*, 10th Dist. No. 20AP-541, 2021-Ohio-4532, ¶ 25, citing *Jones*, 2019-Ohio-2134, at ¶ 33-34 (finding no error in the admission of photographs of victim's severe burn injuries, noting "[t]hat the photographs may be gruesome does not render them inadmissible if they otherwise satisfy the balancing test of Evid.R. 403(A)"). Further, as we discussed above, the state introduced ample other evidence of Wade's gang involvement through Officer Clouse's testimony. Therefore, even if the evidence of the gun found during Wade's arrest was inflammatory, Wade cannot demonstrate it unfairly affected the jury's verdict. *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 41, quoting *Darazim* at ¶ 16 (stating " '[a] trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that *materially prejudices* the affected party' "). (Emphasis added.) *See also Sherman* at ¶ 25 (appellant cannot demonstrate the trial court abused its discretion in engaging in the Evid.R. 403(A) balancing test because even if appellant is correct that the challenged evidence was inflammatory, appellant cannot show the evidence unfairly affected the jury's verdict because of the ample other evidence demonstrating appellant's guilt).

{¶ 83} For these reasons, the trial court did not abuse its discretion in admitting the gun from Wade's arrest into evidence. We overrule Wade's fifth assignment of error.

## VII. Eighth Assignment of Error – Cumulative Effect of Errors

{¶ 84} In his eighth and final assignment of error, Wade argues that even if we conclude none of the above alleged errors are sufficient to be individually prejudicial, the cumulative effect of these errors nonetheless resulted in Wade being denied a fair trial.

{¶ 85} Wade relies on *State v. DeMarco*, 31 Ohio St.3d 191 (1987), for the proposition that although errors at trial singularly "may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *Id*. at paragraph two of the syllabus. Wade urges us to conclude that the many alleged errors at his trial resulted in a fundamentally unfair trial.

{¶ 86} Wade asserts the assignments of error raised in his appellate brief are sufficient to implicate the doctrine of cumulative error. However, as we explained in our resolution of Wade's first through seventh assignments of error, Wade has not identified any errors in the trial court's judgment, let alone two or more cumulative errors. "[W]here there are not multiple errors, the doctrine of cumulative error is not applicable." *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 124; *State v. Moore*, 10th Dist. No. 11AP-1116, 2013-Ohio-3365, ¶ 61 (where a case "presents no errors to cumulate," the doctrine of cumulative errors does not apply). An appellant cannot establish he is entitled to relief under the doctrine of the cumulative effect of errors simply by combining his unsuccessful claims together. *State v. Hodson*, 10th Dist. No. 18AP-242, 2019-Ohio-1734, ¶ 50, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, ¶ 134 (rejecting claim that cumulative effect of counsel's errors and omissions constituted ineffective assistance of counsel where court rejected each of the appellant's individual claims of ineffective assistance); *Mammone*, 2014-Ohio-1942, at ¶ 173 ("[B]ecause none of [the appellant's] individual claims of ineffective assistance has merit, he cannot establish an entitlement to relief simply by joining those claims together."). We, therefore, overrule Wade's eighth and final assignment of error.

## VIII. Disposition

{¶ 87} Based on the foregoing reasons, the trial court did not err in denying Wade's Crim.R. 29 motion for acquittal, the manifest weight of the evidence supports Wade's convictions, Wade did not receive the ineffective assistance of counsel, and the trial court did not err in its evidentiary rulings. Having overruled Wade's eight assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and EDELSTEIN, JJ., concur.

_____